# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF CHRISTOPHER J. DAVIS and
DORETHA LOCK, as the Special Administrator of
the Estate of Christopher J. Davis,

        Plaintiffs,

    v.

JUAN ORTIZ, WALWORTH COUNTY, a municipal
corporation, KURT PICKNELL,
TOWN OF EAST TROY, a municipal corporation,
VILLAGE OF EAST TROY, a municipal corporation,
JAMES R. SURGES, ALAN BOYES,
JEREMY SWENDROWSKI, MATTHEW WEBER,
PAUL SCHMIDT, CRAIG KNOX, JEFF PRICE,
AARON HACKETT, JOSE G. LARA,
ROBERTO JUAREZ NIEVES, Jr.,
ABC INSURANCE COMPANY,
DEF INSURANCE COMPANY and
XYZ INSURANCE COMPANY,

        Defendants.

Case No.: _____

---

## COMPLAINT

---

NOW COME Plaintiffs, Estate of Christopher J. Davis and Doretha Lock, as the Special Administrator of the Estate of Christopher Davis, by their attorneys, Cade Law Group LLC, and as and for his complaint against the Defendants, alleges and shows to the Court as follows:

### INTRODUCTION

1. This cause of action arises out of the shooting death of Christopher J. Davis ("Davis") caused by defendant Juan Ortiz on February 24, 2016, at approximately 5:30 p.m., in the Town of East Troy, County of Walworth, Wisconsin.

2.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of the Plaintiff's rights guaranteed by federal, state and local laws, and the United States Constitution. This action also raises supplemental state law claims concerning the defendants' deliberate indifference and negligence with regards to the death of Davis.

3.     At all times mentioned herein, all Defendants were acting under color of state law, or rights secured to plaintiff by the Eighth and Fourteenth Amendments to the United States Constitution and the laws of the United states. This Court has supplemental jurisdiction over these claims asserted under state law by virtue of 28 U.S.C. § 1367.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1342(a)(4), and 1367(a), as alleged *infra.*

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 as the events complained of arose in this judicial district, and the Defendants work or are located in this District.

## THE PARTIES

6.     At all times relevant hereto and until the time of his death on February 24, 2016, Davis was a citizen of the United States and a citizen of the State of Wisconsin, residing in the City of Milwaukee, County of Milwaukee, State of Wisconsin. Davis was never married and never fathered any children.

7.     At all times relevant hereto and until the time of Davis's death on February 24, 2016, Plaintiff Doretha Lock was the biological mother of Davis and a citizen of the United States, residing with decedent Davis in the City of Milwaukee, County of Milwaukee, State of Wisconsin. Lock's home address is 3278 N. 3rd Street, Milwaukee, WI 53212.

8.     On April 27, 2016, the Circuit Court of Milwaukee County, Wisconsin, Probate Division, Milwaukee County Circuit Court Case No.: 16-PR-0628, appointed Doretha Lock as Special Administrator for the Estate of Christopher Davis. Davis and the Estate of Davis shall be referred to as Davis, unless otherwise indicated.

9.     At all times relevant hereto, Defendant Juan Ortiz ("Ortiz") was employed by the Walworth County Sheriff's Department as a duly appointed and sworn Sheriff's Deputy and was acting under color of law and within the scope of his employment.

10.     Defendant Walworth County ("Walworth County") is a municipal corporation in the State of Wisconsin and is located at 100 W. Walworth Street, Elkhorn, Wisconsin 53121. Walworth County operates and is responsible for the actions of the Walworth County Sheriff's Department ("Department"), including the responsibility to enforce and obey all federal, state and local laws, including constitutional rights. Walworth County is responsible for the training, supervising and disciplining of Department employees, adopting, implementing and enforcing Department policies and practices, and ensuring treatment of citizens and pre-trial detainees comply with United States Constitution and other federal, state and local laws, as well as written Department policies. Walworth County is liable for the Department's policies, practices and customs that caused the harm alleged herein. Pursuant to Wis. Stat. § 895.46(1)(a), Walworth County is required to pay or indemnify all judgments, including compensatory and punitive damages, attorney's fees and costs that that may be awarded against its officials, employees and agents.

11.     Defendant Kurt Picknell ("Picknell"), at all times material, was the Sheriff of Walworth County and the head of the Department. As the Sheriff, Picknell is responsible for the training, supervising and disciplining of Department employees, including deputies such as Ortiz, and adopting, implementing and enforcing Department policies and

practices, and ensuring the actions of Department employees, with regards to their interactions with citizens and detainees comply with United States Constitution and other federal, state and local laws, as well as written Department policies. At all times relevant here, Picknell had personal knowledge of the defacto policies, practices and customs of Department employees having inadequate training as to use of deadly force, amongst other defacto policies referred to herein. Picknell's principal place of business is at 1770 County Road NN, Elkhorn, WI 53121.

12.     Defendant Town of East Troy ("Town") is a municipal corporation in the State of Wisconsin and is located at N9330 Stewart School Road, Mukwonago, Wisconsin 53149. Town operates and is responsible for the actions of the Town of East Troy Police Department ("Town Police"), including the responsibility to enforce and obey all federal, state and local laws, including constitutional rights. Town is responsible for the training, supervising and disciplining of Town Police employees, adopting, implementing and enforcing Town Police policies and practices, and ensuring treatment of citizens and pre-trial detainees comply with United States Constitution and other federal, state and local laws, as well as written Town Police policies. Town is liable for the Town Police's policies, practices and customs that caused the harm alleged herein. Pursuant to Wis. Stat. § 895.46(1)(a), Town is required to pay or indemnify all judgments, including compensatory and punitive damages, attorney's fees and costs that that may be awarded against its officials, employees and agents.

13.     Defendant Village of East Troy ("Village") is a municipal corporation in the State of Wisconsin and is located at 2015 Energy Drive, East Troy, Wisconsin 53120. Village operates and is responsible for the actions of the Village of East Troy Police Department ("Village Police"), including the responsibility to enforce and obey all federal,

state and local laws, including constitutional rights. Village is responsible for the training, supervising and disciplining of Village Police employees, adopting, implementing and enforcing Village Police policies and practices, and ensuring treatment of citizens and pre-trial detainees comply with United States Constitution and other federal, state and local laws, as well as written Village Police policies. Village is liable for the Village Police's policies, practices and customs that caused the harm alleged herein. Pursuant to Wis. Stat. § 895.46(1)(a), Village is required to pay or indemnify all judgments, including compensatory and punitive damages, attorney's fees and costs that that may be awarded against its officials, employees and agents.

14.     Defendant James R. Surges ("Surges") at all times material, was the Chief of the Town Police. As the Chief, Surges was responsible for the training, supervising and disciplining of Town Police employees, including its officers, and adopting, implementing and enforcing Town Police policies and practices, and ensuring the actions of Town Police employees, with regards to their interactions with citizens and detainees comply with United States Constitution and other federal, state and local laws, as well as written Town Police policies. At all times relevant here, Surges had personal knowledge of the defacto policies, practices and customs of Town Police employees having inadequate training as to use of deadly force or use of confidential informants, amongst other defacto policies referred to herein. Surges retired from his position as Chief of Town Police on December 31, 2016. His current home address is believed to be W2620 Kittie Court, East Troy, Wisconsin 53120.

15.     Defendant  Alan Boyes ("Boyes") at all times material, was the Chief of the Village Police. As the Chief, Boyes was responsible for the training, supervising and disciplining of Town Police employees, including its officers, and adopting, implementing

and enforcing Town Police policies and practices, and ensuring the actions of Village Police employees, with regards to their interactions with citizens and detainees comply with United States Constitution and other federal, state and local laws, as well as written Village Police policies. At all times relevant here, Boyes had personal knowledge of the defacto policies, practices and customs of Town Police employees having inadequate training as to use of deadly force or use of confidential informants, amongst other defacto policies referred to herein. It is believed that Boyes retired as Chief of Village Police on or about January 5, 2018. However, Boyes is now a Trustee of Village. Boyes's home address is believed to be 2928 Autumn Lane, East Troy, WI 53120.

16.    At all times relevant hereto, Defendant Jeremy Swendrowski ("Swendrowski") was employed by the Village of East Troy Police Department as its Deputy Chief and was a duly appointed and sworn police officer and was acting under color of law and within the scope of his employment. Upon information and belief, Swendrowski is now the police chief of the Village Police, as of January 5, 2018.

17.    At all times relevant hereto, Defendant Matthew Weber ("Weber") was employed by the Walworth County Sheriff's Department as a duly appointed and sworn Sheriff's Deputy and was acting under color of law and within the scope of his employment.

18.    At all times relevant hereto, Defendant Paul Schmidt ("Schmidt") was employed by the Town of East Troy Police Department as a sergeant and was a duly appointed and sworn police officer and was acting under color of law and within the scope of his employment.

19.    At all times relevant hereto, Defendant Craig Knox ("Knox") was employed by the Town of East Troy Police Department and was a duly appointed and sworn police officer and was acting under color of law and within the scope of his employment.

20.     At all times relevant hereto, Defendant Jeff Price ("Price") was employed by the Village of East Troy Police Department and was a duly appointed and sworn police officer and was acting under color of law and within the scope of his employment.

21.     At all times relevant hereto, Defendant Aaron Hackett ("Hackett") was employed by the Village of East Troy Police Department and was a duly appointed and sworn police officer and was acting under color of law and within the scope of his employment.

22.     Defendant Jose G. Lara ("Lara"), upon information and belief, is a Wisconsin citizen with his last known residence located at 3123A N. 24th Street, Milwaukee, WI 53206.

23.     Defendant Roberto Juarez Nieves, Jr. ("Nieves"), upon information and belief, is a Wisconsin citizen with his last known residence located at 708 W. Pierce Street, Milwaukee, Wisconsin 53204.

24.     Collectively, defendants Ortiz, Picknell, Walworth County, Town of East Troy, Village of East Troy, Swendrowski, Schmidt, Knox, Price, Hackett, Weber, Surges and Boyes shall be referred to as the "Law Enforcement Defendants", unless otherwise stated.

25.     Defendant ABC Insurance Company, upon information and belief, is a domestic insurance company duly conducting business in the State of Wisconsin and is engaged in the business, among other things, of issuing policies of insurance within the State of Wisconsin. Upon information and belief, prior to and including all relevant times herein, ABC issued a policy of liability insurance to Walworth County and all its employees and/or agents thereof. By the terms of said policy, ABC agreed to pay any and all sums for which Walworth County and/or its agents and employees might be held legally liable for injuries or damages caused by Walworth County and/or its employees and agents. Upon

information and belief, said ABC insurance policy was in full force and effect during all time periods relevant here. Pursuant to Wis. Stat. § 803.04, ABC is a proper party to this action.

26.     Defendant DEF Insurance Company, upon information and belief, is a domestic insurance company duly conducting business in the State of Wisconsin and is engaged in the business, among other things, of issuing policies of insurance within the State of Wisconsin. Upon information and belief, prior to and including all relevant times herein, DEF issued a policy of liability insurance to Village and all its employees and/or agents thereof. By the terms of said policy, DEF agreed to pay any and all sums for which Village and/or its agents and employees might be held legally liable for injuries or damages caused by Village and/or its employees and agents. Upon information and belief, said DEF insurance policy was in full force and effect during all time periods relevant here. Pursuant to Wis. Stat. § 803.04, DEF is a proper party to this action.

27.     Defendant XYZ Insurance Company, upon information and belief, is a domestic insurance company duly conducting business in the State of Wisconsin and is engaged in the business, among other things, of issuing policies of insurance within the State of Wisconsin. Upon information and belief, prior to and including all relevant times herein, XYZ issued a policy of liability insurance to Town and all its employees and/or agents thereof. By the terms of said policy, XYZ agreed to pay any and all sums for which Town and/or its agents and employees might be held legally liable for injuries or damages caused by Town and/or its employees and agents. Upon information and belief, said XYZ insurance policy was in full force and effect during all time periods relevant here. Pursuant to Wis. Stat. § 803.04, XYZ is a proper party to this action.

28.     On February 24, 2016, Defendant Lara, who was known to Davis because Lara was the cousin of Davis's girlfriend, requested to borrow Davis's automobile, a 2001 Pontiac Bonneville ("Vehicle"), for the alleged purpose of meeting with an individual who owed Lara money.

29.     Nieves was present at that time and indicated to Davis that he also wanted to travel with Lara.

30.     Davis gave Lara permission to borrow his Vehicle, but Davis insisted that he travel with Lara as Davis was not comfortable with Lara driving the Vehicle without Davis being present in the Vehicle.

31.     Unbeknownst to Davis, Lara and Nieves purportedly were engaged in the buying and selling of drugs, and they allegedly intended to use Davis's Vehicle to participate in a drug buy in Walworth County, as more fully-described below.

32.     Davis was afraid of driving on the freeways and highways of Wisconsin, and therefore was riding in the Vehicle as a passenger. In addition, Davis recently had surgery on his ankles and feet to correct a deformity, and thus would not drive a long distance from Milwaukee to East Troy.

33.     At approximately 5:20 p.m., Lara drove the Vehicle to N8416 County Road ES, East Troy, Wisconsin, 53120 which is located in Walworth County and parked in the parking lot of a restaurant known as Roma's Ristorante & Lounge ("Restaurant).

34.     While Lara drove to the Restaurant, Ortiz, Price, Weber and Swendrowski had just finished arresting a suspect for the selling of drugs. Hackett purportedly was plain-clothed and off-duty at that time, as his shift had ended at 3:30pm that day.

35.     Knox and Schmidt, prior to the shooting, had attended a legal update in-service training at the Walworth County Courthouse from approximately 1:30pm to 5:00 p.m. Schmidt was not in duty and not in uniform while attending the legal update and up until the time of the shooting by Ortiz.

36.     Price contacted Knox and requested that Price to travel to a Burger King, located at 2511 Main Street, East Troy, Wisconsin, which Price did, with Schmidt in the same police vehicle.

37.     Upon arriving at the Burger King, Price informed Knox that Price had just arrested a male subject who possessed marijuana, and that Price had utilized a confidential informant to make this arrest.

38.     Price's confidential informant had been arrested on domestic abuse charges (and possessed marijuana), and Price told the confidential informant, in exchange for information about other individuals who potentially would come to East Troy to sell drugs, that Price would offer the confidential informant "consideration for his current charges or work the charges off."

39.     Price then hatched a plan with the confidential informant and Hackett to lure a drug dealer to the Muskego area to purchase approximately $800 in marijuana.

40.     While at the Burger King, Price then informed Knox that the confidential informant had advised Price that there was another individual, upon information and belief, Lara, who was at the Restaurant with drugs for sale, and that the seller of the drugs was either in a Mercury Marquis or in or near a Mercury Marquis in the parking lot of the Restaurant. Knox believes that the briefing lasted 30 seconds, while Schmidt believed it last approximately two minutes.

41.     Also present at the Burger King during this very limited briefing were Swendrowski, Schmidt and Weber. Hackett was not present at the briefing. Ortiz was supposed to be backup and was not involved in the original drug arrest plan, and he came to the briefing late.

42.     Although Hackett was not at the briefing, he helped Price plan the drug arrest, as he moved the confidential informant's vehicle to the Restaurant parking lot and was with Price at the time Price came up with his drug arrest plan.

43.     Schmidt did not believe the arrest plan was a good idea, as neither he nor Knox were in uniform or had body armor/vests, Schmidt did not have a duty fire arm on him, and that the information from the confidential informant about a Mercury Marquis or someone near or around a Mercury Marquis was not enough information to go on to effectuate an arrest. Schmidt stated to investigators that he did not believe the law enforcement officers had enough information or manpower to effectuate an arrest.

44.     Hackett, because he was not present during the very limited briefing at the Burger King, claimed he did not know any of the details with regards to the "target" vehicle (i.e. the Vehicle). Hackett also had requested to go home, as his shift had ended, but Price insisted that he remain on to assist with the drug arrest.

45.     Subsequently, all of the law enforcement officers present (Knox, Price, Schmidt, Swendrowski, Weber and Hackett) travelled separately to the Restaurant. However, because of a tactical mistake by Price, who made an improper turn onto Highway 20, Knox and Schmidt became the lead vehicle into the Restaurant parking lot, which Schmidt called "tactically faulty" and that Schmidt indicated should have "stopped [Schmidt and Knox's] involvement right then in this whole thing."

46.     At the Restaurant, the law enforcement officers took up positions around the restaurant's parking lot. Also present at the time of the shooting was Price's confidential informant.

47.     Upon arriving at the Restaurant, Price took up a position near the Vehicle. Price did not know where Ortiz had parked his vehicle.

48.     Subsequently, the Vehicle drove away and out of the parking lot. As the Vehicle drove away, Schmidt observed Ortiz on foot moving towards the Vehicle, approximately 15 feet away from the Vehicle. Subsequently, Ortiz fired at least four rounds at the Vehicle, with one of the shots hitting Davis in his head. Davis did not die instantly; he subsequently died on route to the hospital.

49.     Prior to Davis dying, either Lara or Nieves had used a mobile phone to call Lock, and the only thing Davis could continually tell her was that he loved her. He could not communicate the extent of his injuries or that he was dying.

50.     Hackett informed investigators that he never heard Ortiz yell any verbal commands to the Vehicle; instead, he only heard the firing of gunshots.

51.     A chase ensued, with Lara driving the Vehicle at a high rate of speed, and subsequently chased by officers from the Village, the Town, Muskego Police department, and Walworth and Waukesha County deputies. The chase continued into Waukesha County until a P.I.T. maneuver caused the Vehicle to crash, and Lara and Nieves escaped on foot.

52.     At the time of the crash of the Vehicle, Davis was transported to a hospital, but he died on route.

53.     Although dash cam video equipment existed, no dash cam video existed, not even of the chase of the Vehicle by some of the Law Enforcement Defendants. When

investigators searched for the video, they discovered that the dash cam video SD cards were <u>removed</u>, purportedly to download video for the DCI investigators. However, no dash cam video was recovered, and it is believed that some of the Law Enforcement Defendants purposefully removed the dash cam SD cards from their vehicles and destroyed this evidence.

## COUNT 1
### Use of Deadly and Excessive Force – 42 U.S.C. § 1983
### (Against Defendant Ortiz)

54. Davis repeats and realleges the allegations contained in the preceding paragraphs as if fully stated here.

55. Ortiz fired at least four shots into the Vehicle while he was running towards the Vehicle.

56. The Department has rules and policies (the "Rules") against its deputies using deadly-force if other options are available, and written policies requiring its deputies to be trained in the appropriate use of force. Attached hereto and incorporated herein as Exhibit 1 is a true and correct copy of the Affidavit of David Graves, who was the Sheriff of Walworth County as of January 17, 2014 from the case of *Nancy Brown v. Wayne Blanchard, et al.,* E.D. Wisconsin Case No. 13-cv-0511-LA. Attached to Graves' affidavit as Exhibit B is a copy of the Department's Use of Force policy.

57. In firing into the Vehicle, Ortiz violated the Department's Rules.

58. Ortiz created a self-inflicted dangerous situation by his actions.

59. In firing four shots into the Vehicle, Ortiz employed deadly force because there was a substantial risk of causing death or serious bodily harm. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 593 (7th Cir. 1997); *Buchanan v. City of Milwaukee*, 290 F.Supp.2d 954 (E.D. Wis. 2003).

60.     Ortiz's use of deadly force was not justified. He did not know whether the occupants of the Vehicle contained felons or whether the occupants had committed a felony to justify a police stop.

61.     No objectively reasonable officer or deputy would believe that the Vehicle, in driving away from all of the law enforcement personnel present, placed Ortiz or others in imminent danger of death or serious bodily injury. *Tennessee v. Garner*, 471 U.S. 1, 9-11, *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002).

62.     Upon information and belief, the Department has a defacto policy of not providing adequate training to its deputies to handle drug arrests and the firing into moving vehicles.

63.     The inadequate training by the Department is a proximate cause of the injuries, conscious pain and suffering, and ultimately the death of Davis.

64.     Davis has suffered damages in an amount to be determined at trial.

**<u>COUNT 2</u>**
**Unreasonable Search and Seizure, and Use of Deadly Force – 42 U.S.C. § 1983**
**(Against all Law Enforcement Defendants)**

65.     Davis repeats and realleges the allegations contained in the preceding paragraphs as if fully stated here.

66.     As Schmidt indicated to investigators, the Law Enforcement Defendants knew or should have known that the law enforcement officers who responded to the Restaurant did not have enough information to effectuate an arrest.

67.     Law Enforcement Defendants knew or should have known that the law enforcement officers who responded to the Restaurant did not have an adequate plan to effectuate the arrest of a purported drug dealer, and that because of the lack of an adequate plan, serious bodily injury to an individual could take place.

- 14 -

68.    At all relevant times, Law Enforcement Defendants, in failing to have an adequate plan for the arrest of a purported drug dealer, not having enough probable cause to effectuate an arrest and traveling to the restaurant in marked police vehicles to make an arrest acted under color of State law to deprive Davis of his constitutionally-protected rights, including, but not limited to, the right to be free of an unreasonable seizure of his person, guaranteed by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. The injuries, conscious pain and suffering and ultimate death that Davis suffered are the direct result of Law Enforcement Defendants' failures.

69.    Davis has suffered damages in an amount to be determined at trial.

**COUNT 3**
**Failure to Intervene – 42 U.S.C. § 1983**
**(Against Defendants Knox, Price, Schmidt, Swendrowski, Hackett and Weber)**

70.    Davis repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

71.    Officers Price, Schmidt, Swendrowski, Hackett and Deputy Weber, as previously alleged, had the opportunity, duty and ability to intervene and object to Knox's plan to travel to to the Restaurant and call off the alleged drug bust because these defendants had not adequately discussed each other's roles in the drug bust, did not have an adequate plan or discuss steps each would take to effectuate an arrest and/or seizure once defendants were at the Restaurant, and did not have enough probable cause to effectuate an arrest.

72.    Officers Price, Schmidt, Swendrowski, Hackett, Knox and Deputy Weber, as previously alleged, also had the opportunity, duty and ability to intervene on behalf of Davis prior to the time that Ortiz discharged his weapon into the Vehicle to stop Ortiz or communicate to Ortiz that he should allow the Vehicle to pass by him unmolested.

- 15 -

73.     Officers Price, Schmidt, Swendrowski, Hackett, Knox and Deputy Weber failed to intervene, and as a direct and proximate result of said failure(s), were a cause of the injuries, conscious pain and suffering, and ultimate death that Davis sustained at the hands of Ortiz.

74.     Officers Price, Schmidt, Swendrowski, Knox, Hackett and Deputy Weber are liable to Davis in an amount to be determined at trial.

75.     Davis suffered damages in an amount to be determined at trial.

**Count 4**
**Municipal (*Monell*) Liability**
**(Against Walworth County – pursuant to Wis. Stat. § 1983)**

76.     Davis repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

77.     Prior to February 24, 2016, Defendant Walworth County, through Picknell and other supervisory members of the Department, knew or should have known that the Department did not have adequate policies or training in place with regards to its deputies using deadly force, including the firing of a weapon into moving vehicles.

78.     Despite this knowledge, Defendant Walworth County, through Picknell and other supervisory members of the Department, failed to take those steps necessary to provide adequate training and/or supervision to the Department's employees and agents to ensure its employees acted consistently with use of deadly force, including the firing of a weapon into a moving vehicle, as required by federal, state, and local law, and the United States Constitution.

79.     Defendant Walworth County and/or Picknell's failure to provide adequate training amounted to a deliberate indifference on the part of Walworth County through Picknell and the Department to the constitutional rights of Davis.

80.     The deliberate indifference of Walworth County, through Picknell and/or other supervisory members of the Department, to the constitutional rights of Davis, despite repeated knowledge of the failure of the department's employees to comply with the department's Rules, including the use of deadly force and firing of a weapon into a moving vehicle, directly and proximately deprived Davis of his constitutional rights, and caused him injuries, conscious pain and suffering and ultimately death.

81.     Davis has suffered damages in an amount to be determined at trial.

**COUNT 5**
**Municipal (*Monell*) Liability**
**(Against Town of East Troy – pursuant to Wis. Stat. § 1983)**

82.     Davis repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

83.     Prior to February 24, 2016, the Town, through Surges and other supervisory members of Town Police, knew or should have known that Town Police did not have adequate policies or training in place with regards to use of confidential informants and use of information from confidential informants to effectuate drug buys and or arrests.

84.     Despite this knowledge, the Town, through Surges, and other supervisory members of Town Police, failed to take those steps necessary to provide adequate training and/or supervision to the Town Police's employees and agents to ensure their employees acted consistently with federal, state and local laws, and the U.S. Constitution, with regards to use of confidential informants and use of information form confidential informants to effectuate drug buys and or arrests.

85.     Defendant Town and/or Surges failure to provide adequate training amounted to a deliberate indifference on the part of the Town to the constitutional rights of Davis.

86.     The deliberate indifference of Town, through Surges and/or other supervisory members of the Town Police, to the constitutional rights of Davis, despite repeated knowledge of the failure of Town Police officers and employees to comply with federal, state and local laws, and the U.S. Constitution, with regards to use of confidential informants and use of information form confidential informants to effectuate drug buys and or arrests, directly and proximately deprived Davis of his constitutional rights, and caused him injuries, conscious pain and suffering and ultimately death.

87.     Davis has suffered damages in an amount to be determined at trial.

**COUNT 6**
**Municipal (*Monell*) Liability**
**(Against Village of East Troy – pursuant to Wis. Stat. § 1983)**

88.     Davis repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

89.     Prior to February 24, 2016, the Town, through Boyes, and other supervisory members of Village Police, knew or should have known that Village Police did not have adequate policies or training in place with regards to use of confidential informants and use of information from confidential informants to effectuate drug buys and or arrests.

90.     Despite this knowledge, the Village, through Boyes, and other supervisory members of Village Police, failed to take those steps necessary to provide adequate training and/or supervision to the Village Police's employees and agents to ensure their employees acted consistently with federal, state and local laws, and the U.S. Constitution, with regards to use of confidential informants and use of information form confidential informants to effectuate drug buys and or arrests.

91.    Defendant Village and/or Boyes failure to provide adequate training amounted to a deliberate indifference on the part of the Village to the constitutional rights of Davis.

92.    The deliberate indifference of Village, through Boyes and/or other supervisory members of the Village Police, to the constitutional rights of Davis, despite repeated knowledge of the failure of Village Police officers and employees to comply with federal, state and local laws, and the U.S. Constitution, with regards to use of confidential informants and use of information form confidential informants to effectuate drug buys and or arrests, directly and proximately deprived Davis of his constitutional rights, and caused him injuries, conscious pain and suffering and ultimately death.

93.    Davis has suffered damages in an amount to be determined at trial.

**COUNT 7**
**State Law Indemnification**
**(Against Defendants Walworth County, Town of East Troy and Village of East Troy)**

94.    Davis repeats and realleges the allegations contained in the preceding paragraphs as is fully stated herein.

95.    At all times material hereto, the Law Enforcement Defendants, as alleged herein, committed the acts under color of law and within the scope of their employment Walworth County, the Town or the Village.

96.    Pursuant to Wis. Stat. § 895.46, Defendant Walworth County is obligated to pay any tort judgment for damages for which its employees are liable for acts occurring within the scope of their employment.

97.    Pursuant to Wis. Stat. § 895.46, Town is obligated to pay any tort judgment for damages for which its employees are liable for acts occurring within the scope of their employment.

98.     Pursuant to Wis. Stat. § 895.46, Village is obligated to pay any tort judgment for damages for which its employees are liable for acts occurring within the scope of their employment.

## COUNT 8
### Wis. Stat. §§ 895.03 and 895.04
### (Wisconsin Wrongful Death against Law Enforcement Defendants)

99.     Davis repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

100.    Defendants Ortiz, Knox, Price, Schmidt, Swendrowski, Hackett and Weber had a duty to observe and respect Davis' constitutional rights.

101.    Defendants Ortiz, Knox, Price, Schmidt, Swendrowski, Hackett and Weber breached their duty of care.

102.    Had Defendants Ortiz, Knox, Price, Schmidt, Swendrowski, Hackett and Weber properly observed and not deprived Davis of his constitutional rights, Davis would not have been killed, nor would Davis have been injured and suffered conscious pain and suffering.

103.    Defendants Ortiz, Knox, Price, Schmidt, Swendrowski, Hackett and Weber breach was a direct and proximate cause and substantial factor in causing Davis' damages.

104.    Defendants Picknell, Surges and Boyes had a duty to exercise reasonable care in instructing, supervising and training Defendants Ortiz, Knox, Price, Schmidt, Swendrowski and Weber.

105.    Defendants Picknell, Surges and Boyes breached their duty of care.

106.    Had Defendants Picknell, Surges and Boyes properly exercised reasonable care in instructing, supervising and training Defendants Ortiz, Knox, Price, Schmidt,

Swendrowski, Hackett and Weber, Davis would not have been killed, nor would Davis have been injured and suffered conscious pain and suffering.

107.    Defendants Picknell, Surges and Boyes breach was a direct and proximate cause and substantial factor in causing Davis's damages.

108.    As a result of the negligence of the Law Enforcement Defendants, Davis suffered injuries, great conscious pain and suffering and ultimately death.

109.    Davis has suffered damages in an amount to be determined at trial.

**COUNT 9**
**Wis. Stat. §§ 895.03 and 895.04**
**(Wisconsin Wrongful Death against Defendants Lara and Nieves)**

110.    Davis repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

111.    Defendants Lara and Nieves owed Davis a duty of care to obey all laws while driving, and to not place Davis in a dangerous and potentially deadly situation.

112.    Defendants Lara and Nieves breached the duties that they owed to Davis by attempting to engage in a drug buy and subsequently driving away when the law enforcement defendants were on the scene at the restaurant.

113.    The actions of Defendants Lara and Nieves were a direct and proximate cause of Davis's injuries, conscious pain and suffering, and ultimate death.

114.    Davis has suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.      For damages in an amount to be determined at trial;

2.      For attorney's fees pursuant to 42 U.S.C. § 1988;

3.      For all costs and fees incurred in bringing this suit; and,

4.      For such other and further relief as the Court deems proper.

Dated this 25th day of November, 2018.

**CADE LAW GROUP LLC**

By: s/Nathaniel Cade, Jr.
        Nathaniel Cade, Jr.
        P.O. Box 170887
        Milwaukee, WI  53217
        (414) 255-3802 (phone)
        (414) 255-3804 (fax)
        nate@cade-law.com
        Attorneys for Plaintiff

**PLAINTIFF DEMANDS A TRIAL BY JURY OF TWELVE**